**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:20-CV-00054-HBB**

**WAYNE PUCKETT**                                                                              **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI, ACTING COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION[1]**                               **DEFENDANT**

**MEMORANDUM OPINION**
**AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Wayne Puckett ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both the Plaintiff (DN 14) and Defendant (DN 18) have filed a Fact and Law Summary.   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and that judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11).   By Order entered January 29, 2021 (DN 12), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

---

1 Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

## FINDINGS OF FACT

On June 5, 2017, Plaintiff protectively filed an application for Disability Insurance Benefits (Tr. 13, 161-62, 163-64).   Plaintiff alleged that he became disabled on August 15, 2014, because of body pain, obesity, asthma, hypertension, and heartburn (Tr. 13, 66-67, 75, 180). Administrative Law Judge Maribeth McMahon ("ALJ") conducted a video hearing from Paducah, Kentucky, on December 12, 2018 (Tr. 13, 31).   Plaintiff and his counsel, Sara Martin-Diaz, participated from Owensboro, Kentucky (Id.).[2]   Kenneth Boaz, an impartial vocational expert, testified during the hearing (Id.).

In a decision dated May 15, 2019, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 13-22).   The ALJ ascertained that Plaintiff's insured status expired on December 31, 2018 (Tr. 15).   At the first step, the ALJ found Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of August 15, 2014, through his date last insured of December 31, 2018 (Id.). At the second step, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, hypertension/headaches, left shoulder osteoarthritis, asthma, obstructive sleep apnea, and obesity (Id.).   The ALJ also determined that Plaintiff has the following "non-severe" impairments: carpal tunnel syndrome of the left wrist, major depressive disorder, generalized anxiety, and post-traumatic stress disorder ("PTSD") (Tr. 15-16).[3]

---

2 The Court relied on the hearing transcript which indicates that attorney Sara Martin-Diaz represented Plaintiff during the video hearing (Tr. 31).   In contrast to the transcript, the ALJ's decision reports that attorney Samuel Kyle LaMar represented Plaintiff during the video hearing (Tr. 13).

3 In assessing the mental impairments, the ALJ found that Plaintiff had "no limitation" in the four areas of mental functioning known as the "paragraph B" criteria (Tr. 16).   Thus, the ALJ concluded the mental impairments were non-severe (Id. citing 20 C.F.R. § 404.1520a(d)(1)).

At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 17).   At the fourth step, the ALJ found that, through the date last insured, Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff is limited to no climbing of ladders, ropes, or scaffolds; limited to frequent climbing of ramps and stairs, stooping, and kneeling; limited to occasional crouching, and crawling; limited to frequently reaching in any direction with the left upper extremity; and he should avoid unprotected heights, dangerous machines, vibration, fumes, dusts, gas, odors, poor ventilation, extreme heat, cold, humidity, and wetness (Id.).   The ALJ relied on testimony from the vocational expert to find through the date last insured, Plaintiff was unable to perform any of his past relevant work (Tr. 20).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 20-21).   The ALJ found that through the date last insured, Plaintiff was capable of performing a significant number of jobs that exist in the national economy (Id.).   Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined in the Social Security Act, at any time from August 15, 2014, the alleged onset date, through December 31, 2018, the date last insured (Tr. 22).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 160).   The Appeals Council denied Plaintiff's request for review (Tr. 1-5).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

4

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.   *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1)   Is the claimant engaged in substantial gainful activity?

2)   Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)   Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)   Does the claimant have the RFC to return to his or her past relevant work?

5

> 5)    Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Finding No. 5

1.  Arguments of the Parties

Plaintiff's challenge to the RFC determination in Finding No. 5 is based on three arguments (DN 14-1 PageID # 839-51).   Specifically, Plaintiff claims (1) it was "clear error" for the ALJ to have relied on the findings of the non-examining state agency medical consultants in determining the physical limitations in the RFC because they failed to consider his shoulder and back pain (Id. at PageID # 839-41); (2) there was not substantial evidence to support the ALJ's physical RFC finding, which included the ability to perform light work and reach in any direction with the left upper extremity (Id. at PageID # 841-44); and (3) the ALJ erred in failing to accept Plaintiff's testimony—regarding physical limitations, pain, and side effects from required medication—as fully credible and failing to state a sufficient reason for doing so (Id. at PageID # 849-51).

Defendant asserts the ALJ determined that Plaintiff could perform a reduced range of light work after considering the medical evidence, medical opinions, and Plaintiff's testimony (DN 18 PageID # 863-71).   Defendant contends: (1) the ALJ reasonably concluded from the evidence in the record that Plaintiff could perform a range of light work with certain postural and environmental limitations (Id. at PageID # 864-68); (2) the ALJ's analysis of the persuasiveness of the medical opinions from the non-examining State agency physicians is supported by substantial evidence in the record and comports with the regulations that apply to claims filed on or after March 27, 2017 (Id. at PageID # 868-69); and (3) the ALJ's reasonable evaluation of

Plaintiff's subjective complaints is supported by substantial evidence and comports with applicable law (Id. at PageID # 869-71).

    2.  Applicable Law

Plaintiff's challenge to the RFC determination includes an argument that "[i]t was clear error for the ALJ to have relied" on the prior administrative medical findings of the non-examining State agency doctors (DN 14-1 PageID #839).   But Plaintiff's argument relies on the wrong standard of review.[4]   Under the applicable standard of review, the Court is limited to determining whether the findings in the final decision of the Commissioner are supported by "substantial evidence" and whether the correct legal standards were applied.   *See* 42 U.S.C. § 405(g); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 374 (6th Cir. 2013); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011)).

The RFC finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.   20 C.F.R. §§ 404.1545(a), 404.1546(c).   The Administrative Law Judge makes this finding based on a consideration of medical opinions, prior administrative medical findings, and all other evidence in the case record.   20 C.F.R. §§ 404.1520c, 404.1529, 404.1545(a)(3), 404.1546(c).   Thus, in making the RFC finding the Administrative Law Judge must necessarily evaluate the persuasiveness of the medical

---

4 The "clear error" standard applies when a district judge reviews a magistrate judge's report and recommendation to which no timely objection has been filed.   *See* Fed. R. Civ. P. 72 Advisory Committee Note Subdivision (b) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); Mitchum v. Saul, No. 2:19-CV-02533-JPM-dkv, 2020 WL 1493482, at *1 (W.D. Tenn. March 27, 2020); Samona v. Comm'r of Soc. Sec., No. 15-CV-11713, 2018 WL 2159893, at *1 (E.D. Mich. May 10, 2018).   The "clear error" standard also applies when a party moves a district court to alter or amend its judgment under Fed. R. Civ. P. 59(e).   *See* Moore v Berryhill, No. 4:17-CV-00091-HBB, 2018 WL 2197974, at *1 (W.D. Ky. May 14, 2018).   Neither situation exists here.

opinions in the record and assess the claimant's subjective allegations.   20 C.F.R. §§ 404.1520c, 404.1529(a).

The new regulations for evaluating medical opinions are applicable to Plaintiff's case because he filed his application after March 27, 2017.   *See* 20 C.F.R. § 404.1520c.   The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," [5] in the record, even if it comes from a treating medical source.   20 C.F.R. § 404.1520c(a).[6]   Instead, Administrative Law Judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation.   20 C.F.R. § 404.1520c(a) and (b).   The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors.   20 C.F.R. § 404.1520c(c)(1)-(5).[7]   Of these five factors, the two most important are supportability and consistency.   20 C.F.R. § 404.1520c(a) and (b)(2).   Further, the regulation requires Administrative Law Judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion.   20 C.F.R. § 404.1520c(b)(2).   Notably, under the regulations Administrative Law Judges "may, but are not

---

5 At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings."   20 C.F.R. § 404.1513a(a)(1).   Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation.   20 C.F.R. § 404.1513a(b)(1).

6 The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. § 404.1527(c)(2).

7 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.   20 C.F.R. § 404.1520c(c)(3)(i)-(v).

required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion.   20 C.F.R. § 404.1520c(b)(2).

In assessing a claimant's RFC, the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make findings.   20 C.F.R. § 404.1529; Social Security Ruling 16-3p ("SSR 16-3p").   A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged.   20 C.F.R. § 404.1529(a); SSR 16-3p.

In determining whether a claimant suffers from debilitating pain and other symptoms, the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986), applies.   First, the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition.   If there is, then the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain."   Id.   When, as in this case, the reported pain and other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the Administrative Law Judge will consider other information and factors which may be relevant to the degree of pain alleged.   20 C.F.R. § 404.1529(c)(3); SSR 16-3p.

3.  Discussion

The ALJ's RFC analysis begins with an accurate summary of Plaintiff's claims and testimony concerning his shoulder issues, back problems, headaches, depression, PTSD, breathing issues, sleep apnea, fatigue, as well as the effectiveness and side effects of the prescribed medications and CPAP machine (Tr. 17-18).   The ALJ indicated, after carefully considering the evidence in the record, that she found Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record (Tr. 18).   Thus, the ALJ concluded that the objective medical evidence did not confirm the severity of the alleged pain and other symptoms arising from Plaintiff's conditions.

In the paragraphs that follow, the ALJ substantiated this conclusion with a thorough summary of the medical evidence pertaining to Plaintiff's shoulder and back problems which included the results of physical examinations, physical therapy, CT scans, the effectiveness of pain management through prescribed medications such as hydrocodone and Norco, and the significant improvement of Plaintiff's overall function (Tr. 18-19).   The ALJ also corroborated her conclusion with a summary of the medical evidence addressing Plaintiff's history of hypertension which generally has been controlled with medication (Tr. 19).   Additionally, the ALJ discussed the medical evidence addressing Plaintiff's sleep apnea and the consequences of Plaintiff's noncompliance with medical advice regarding his use of the CPAP machine (Id.).

The ALJ then commented as follows:

> The objective evidence of record does not support the claimant's subjective allegations.   He lives alone, and is able to drive, take care of his personal needs, and do some chores.   He testified that doing

10

things around the house like laundry and mopping causes the pain to worsen, and his daughter comes daily to help him.   The claimant said that he folds clothes, but has to take breaks.   He testified that hydrocodone makes his pain tolerable.   The claimant has a rental property and stated that he does some things there, but it takes him a long time.   He has had 2 previous left shoulder surgeries in 2005, and a physical therapy referral, though he was not compliant (Exhibits 2F, 3F).   Records note that 2 surgeons have told the claimant that he is currently not a candidate for surgery for his shoulder, neck, or back pain (Exhibit 6F/l7, 22).   Orthopedic records show him with generally normal findings on physical examination (Exhibit 4F/5-8).   Pain management records show him reporting that his medication helped control his pain and improved his function and overall quality of life, and he reported that his pain was adequately controlled (Exhibit 12F/8, 24).   July 2018 records note that he did have intermittent pain exacerbations, but his overall function was significantly improved, and his pain medication continued to be very effective in controlling his pain exacerbations (Exhibit 20F/34).   His treatment records note that his pain was reduced from 9 out of 10 to 2 to 3 out of 10, and he had no adverse side effects (Exhibit 20F/9).   The ongoing workers' compensation case interferes with treatment and going back to work.   The claimant has sleep apnea, but he was diagnosed with behaviorally induced insufficient sleep syndrome, with him going to bed at midnight and only using his CPAP for 5 hours, so he was still tired in the daytime (Exhibit 13F/19).   Overall, his treatment records reflect generally normal to mild physical examinations, and especially normal mental status examinations.   As documented above, the claimant has only had about 6 months of recent mental health treatment, and his mental impairments are found to be non-severe.   Given the above evidence, and the opinion evidence below, the undersigned finds the claimant's impairments limit him to a reduced range of light work, but do not persist at disabling levels.

(Tr. 19-20).   The above analysis shows that the ALJ appropriately considered other information

and factors that may be relevant to the degree of pain and other symptoms alleged.   20 C.F.R.

§ 404.1529(c)(3); SSR 16-3p.

11

For example, the ALJ considered Plaintiff's level of daily activity as a factor in determining the extent to which pain and other symptoms are of disabling severity. *See* 20 C.F.R. § 404.1529(c)(3)(i); SSR 16-3p; Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993); Blacha v. Sec'y of Health & Human Servs., 927 F.2d 228, 231 (6th Cir. 1990). The ALJ also noted inconsistencies in the evidence and the extent to which there were conflicts between Plaintiff's statements and the rest of the evidence. *See* 20 C.F.R. § 404.1529(c)(4); SSR 16-3p. Another factor the ALJ considered was the medications used to alleviate Plaintiff's alleged pain and other symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(iv). The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his impairments were not entirely consistent with the medical and other evidence in the record. *See* 20 C.F.R. § 404.1529(c)(4); SSR 16-3p. The undersigned concludes the above-mentioned findings regarding Plaintiff's subjective statements are supported by substantial evidence and fully comport with applicable law.

Next, Plaintiff takes issue with the ALJ relying on the prior administrative medical findings of the non-examining State agency doctors. But Plaintiff has mistakenly relied on the rule in 20 C.F.R. § 404.1527 in his argument. As Plaintiff filed her application after March 27, 2017, the new rule in 20 C.F.R. § 404.1520c applies. In fact, the ALJ directly quoted the first sentence in § 404.1520c(a) when she commented "we will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from your medical sources" (Tr. 20). In the discussion that follows, the ALJ implicitly acknowledged that there were no medical opinions from treating or examining sources in the record (Id.). Additionally, the ALJ accepted that the non-examining State agency medical and psychological consultants, at the initial and reconsideration levels, had not provided a residual

12

functional capacity assessment for Plaintiff (Id.).   The ALJ then explained that their analysis and findings, based on "the medical evidence of record to date," along with "additional medical evidence of record" were considered in making the RFC determination (Id.).   Contrary to Plaintiff's assertion, the ALJ's conduct comports with applicable law.   When, as here, the non-examining State agency medical or psychological source has not had the opportunity to review the complete case record, the Administrative Law Judge must consider the subsequently submitted evidence in assessing the source's findings and in making the RFC determination.   *See* Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 632-33 (6th Cir. 2016); Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009).   Moreover, the above-mentioned findings by the ALJ are supported by substantial evidence in the record.

Finally, Plaintiff asserts that substantial evidence does not support the RFC determination because the ALJ failed to adequately consider the evidence in the record addressing the limiting effects of his degenerative disc disease, neck pain, and left shoulder osteoarthritis.   There is no merit to Plaintiff's contention.   As explained above, the ALJ substantiated her RFC determination with a thorough review of the medical and nonmedical evidence in the record, including Plaintiff's subjective statements, pertaining to these conditions (Tr. 18-20).   Further, for the foregoing reasons, substantial evidence in the record supports the ALJ assessment of Plaintiff's subjective statements and the ALJ's findings concerning the limitations imposed by Plaintiff's impairments.   Thus, the ALJ's RFC determination is supported by substantial evidence in the record and comports with applicable law.   This means that Plaintiff is not entitled to relief on her challenge the ALJ's RFC determination set forth in Finding No. 5.

Finding Nos. 7, 10, and 11

1.   Arguments of the Parties

Plaintiff challenges the ALJ's step five findings by raising two claims.   First, Plaintiff argues it was clear error for the ALJ to: (1) classify him as a "younger individual" on his date last insured, December 31, 2018, because he was "closely approaching advanced age;"[8]  and (2) to find he had the RFC to perform light work instead of sedentary work (DN 14-1 PageID # 844-45). Plaintiff accuses the ALJ of intentionally making these erroneous findings to avoid a favorable GRID ruling at step five (Id.).   Next, Plaintiff asserts that the vocational expert's testimony does not constitute substantial evidence to support Finding No. 10 for two reasons (Id. at PageID # 845-49).   First, the vocational expert's testimony is based on obsolete job descriptions from the Dictionary of Occupational Titles ("DOT") (Id.).   Next, the jobs identified by the vocational expert do not satisfy the "significant" number of positions requirement in 20 C.F.R. § 404.1566 because the vocational expert's testimony indicates a combined total of less than 8,000 jobs regionally (Id. citing Cunningham v. Astrue, 360 F. App'x 606 (6th Cir. 2010)).

Defendant points out that Finding No. 7 correctly states that Plaintiff "was born on March 29, 1967 and was 51 years old," but mistakenly indicates "which is defined as a younger individual 18-49, on the date last insured (20 CFR 404.1563)" (DN 18 PageID # 871-72, quoting Tr. 20). Defendant characterizes the mistake as a harmless typographical error because the ALJ relied on the vocational expert's testimony to find Plaintiff was not disabled (Id.).[9]   Defendant asserts that

---

8 Plaintiff indicates that he should have been classified as "closely approaching advanced age" because his 50th birthday was on March 29, 2017 (DN 14-1 PageID # 844).

9 Defendant acknowledges that Plaintiff would have been harmed if the ALJ found him not disabled under the Grid

the vocational expert's testimony provided substantial evidence to support Finding No. 10 because it indicated, through the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed (Id. at PageID # 872-73).   Further, Plaintiff has forfeited the argument that the job descriptions in the DOT were obsolete because Plaintiff failed to cross-examine the vocational expert on this issue (Id. at 873-78).

2.   Applicable Law

At the fifth step, the Commissioner has the burden of demonstrating a significant number of jobs exist in the national economy that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience.   20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 404.1566(a); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).   When a claimant's age, education, previous work experience, and residual functional capacity coincide with all of the criteria of a particular Grid Rule in Appendix 2 of the regulations, referred to as the medical-vocational guidelines, the Commissioner may rely on that Grid Rule to meet this burden.   20 C.F.R. § 404.1569; Grid Rule 200.00; Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Moon, 923 F.2d at 1181.   However, if a claimant's age, education, previous work experience, and residual functional capacity do not coincide with all the criteria of a particular Grid Rule, the Commissioner is limited to using the Grid Rule as a framework in the decision-making process and must make a non-guideline determination based on the testimony of a vocational expert.   20 C.F.R. § 404.1566(e); Born, 923 F.2d at 1174; Varley

---

Rules because of using the wrong age category (DN 18 PageID # 872).

v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).   For example, if the claimant suffers from an exertional and a non-exertional impairment then the Grids may be used only as a framework to provide guidance for decision making.   20 C.F.R. § 404.1569a(d); 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); Abbot v. Sullivan, 905 F.2d 918, 926-927 (6th Cir. 1990); Cole v. Sec'y of Health & Human Servs., 820 F.2d 768, 771 (6th Cir. 1987); Kirk, 667 F.2d at 528-529.

   3.   Discussion

   Plaintiff's challenge includes an argument that "[i]t was clear error for the ALJ to have classified Mr. Pucket as a 'younger individual' on his date last insured and to not have engaged in a GRID analysis" (DN 14-1 PageID #844).   But, for the reasons previously provided, Plaintiff's argument relies on the wrong standard of review.   Under the applicable standard of review, the Court is limited to determining whether the findings in the final decision of the Commissioner are supported by "substantial evidence" and whether the correct legal standards were applied.   *See* 42 U.S.C. § 405(g); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 374 (6th Cir. 2013); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011)).

   Finding No. 7 reads, "The claimant was born on March 29, 1967 and was 51 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563)" (Tr. 20).   The ALJ's determinations regarding Plaintiff's date of birth and current age are supported by substantial evidence in the record.   The regulations classify an individual under age 50 as a "younger individual."   *See* 20 C.F.R. § 404.15639(c).   Whereas an individual age 50 to 54   is   designated   a   "person   closely   approaching   advanced   age."    *See*   20   C.F.R.

16

§ 404.15639(d).   Thus, the ALJ should have found that Plaintiff is defined as a "person closely approaching advanced age" on the date last insured.   *See* id.

The Court must now examine the record to make a case-specific determination whether the ALJ's error is prejudicial or harmless.   Shinseki v. Sanders, 556 U.S. 396, 407.   Plaintiff carries the burden of showing that prejudice resulted because he seeks to have the final decision of the Commissioner set aside due to this error.   Id. at 409.

In an effort to demonstrate prejudice, Plaintiff asserts that a Grid Rule would have directed a finding of "disabled" if the ALJ found: (1) he is a "person closely approaching advanced age," and (2) his RFC is limited to sedentary work with limitations on overhead lifting and fingering. But Plaintiff has not identified a specific Grid Rule and explained why each of its criteria are satisfied.   It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."   United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); *see also* Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); Rice v. Comm'r of Soc. Sec., 169 F. App'x 452, 453 (6th Cir. 2006).   Therefore, Plaintiff is deemed to have waived the issue of prejudice due to the absence of some effort at developed argumentation substantiating his assertion.

Notwithstanding, Plaintiff's assertion of prejudice is fatally undermined by the Court's conclusions regarding the ALJ's RFC finding.   An RFC for light work means that the Grid Rules in Table No. 2 apply to Plaintiff's case, not the Grid Rules in Table No. 1 as Plaintiff implicitly suggests.   *See* 20 C.F.R. Pt 404, Subpt. P, App. 2.   Grid Rules 202.10 and 202.11 in Table No. 2 are most applicable to Plaintiff's circumstances because he is limited to light work, he is closely

approaching advanced age, and he has a limited or less education.[10]   They direct a determination of "not disabled."   Additionally, Plaintiff's assertion of prejudice is further damaged by the non-exertional limitations included in the ALJ's RFC determination.   The non-exertional limitations limited the ALJ to using the Grid Rules as a framework in the decision-making process and required her to make a non-guideline determination based on the testimony of the vocational expert.   *See* 20 C.F.R. § 404.1569a(d); 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); Abbot v. Sullivan, 905 F.2d 918, 926-927 (6th Cir. 1990); Cole v. Sec'y of Health & Human Servs., 820 F.2d 768, 771 (6th Cir. 1987); Kirk, 667 F.2d at 528-529.

The Court will now address Plaintiff's challenges to Finding Nos. 10 and 11.   During the administrative hearing, the ALJ posed a hypothetical question to the vocational expert that accurately conveyed the limitations in the RFC determination (*compare* Tr. 17 *and* Tr. 56).   In response, the vocational expert testified that the hypothetical individual could work as: a mail clerk, DOT No. 209.687-026 with 68,000 positions in the national economy; an assembler in small products, DOT No. 706.684-022 with 180,000 positions in the national economy; and a ticket seller, DOT No. 211.467-030 with 36,000 positions in the national economy (Tr. 56-57).   The ALJ relied on the vocational expert's testimony to find through the date last insured—considering Plaintiff's age, education, work experience, and RFC—there are jobs that existed in significant numbers in the national economy that Plaintiff could have performed (Tr. 20-21, Finding No. 10).

---

10 The vocational expert testified that Plaintiff's past work as a maintenance engineer is classified as semi-skilled in the Dictionary of Occupational Titles ("DOT") and his past work as a merchandise delivery person is classified as unskilled in the DOT (Tr. 56).   Thus, Grid Rule 202.10 may apply to Plaintiff because it specifies that the claimant has unskilled or no previous work experience.   More likely Grid Rule 202.11 applies to Plaintiff because it specifies that the claimant has skilled or semiskilled work experience, but those skills are non-transferable.

The ALJ relied on this finding to conclude that Plaintiff had not been under a disability from August 15, 2014, the alleged onset date, through December 31, 2018, the date last insured (Tr. 22, Finding No. 11).

Plaintiff attacks these findings by asserting that the vocational expert's testimony is based on obsolete job descriptions from the DOT.  The circumstances here are similar to those in a recently issued unpublished Sixth Circuit order.  *See* O'Neal v. Comm'r of Soc. Sec., 799 F. App'x 313, 316-18 (6th Cir. 2020).  In O'Neal, as here, the ALJ satisfied her responsibility under SSR 00-4p by ensuring that the vocational expert's testimony did not conflict with the information in the DOT (Tr. 64).  *See* id. at 317-18.  Having fulfilled this requirement, the ALJ in O'Neal, and here, could rely on the vocational expert's testimony in making her step five findings.  *See* id.  Because nothing in SSR 00-4p imposes an affirmative duty on the ALJ to independently determine whether the vocational expert's testimony is correct, the Sixth Circuit in O'Neal concluded that the claimant must develop any potential challenges to the vocational expert's testimony through cross-examination during the hearing.  Id. at 318; Martin v. Comm'r of Soc. Sec., 170 F. App'x 369, 374 (6th Cir. 2006).  In O'Neal, despite having the opportunity to do so, the claimant failed to cross-examine the vocational expert about the purported obsolescence of the DOT job description at issue.  799 F. App'x at 318.  Similarly, here, Plaintiff did not inquire about the obsolescence of the three DOT job descriptions when he cross-examined the vocational expert (Tr. 57-60).  Like the Sixth Circuit in O'Neal, this Court cannot know whether cross-examination of the vocational expert would have suggested that the three DOT job descriptions are in fact obsolete.  Id.  In O'Neal, the Sixth Circuit held "[b]ecause the DOT continues to be recognized as a source of reliable information and O'Neal did not cross-examine the vocational

expert when he had the opportunity, the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that O'Neal was able to perform work that existed in significant numbers in the national economy." O'Neal, 799 F. App'x at 318. Considering the substantially similar circumstances and the Sixth Circuit's reasoning in O'Neal, this Court holds that Plaintiff forfeited his claim by failing to develop it through cross-examination, and the vocational expert's testimony constitutes substantial evidence to support Finding Nos. 10 and 11.

Alternatively, Plaintiff seeks to undermine the vocational expert's testimony by asserting the identified jobs do not satisfy the "significant" number of jobs requirement in 20 C.F.R. § 404.1566 (DN 14-1 PageID # 847). According to Plaintiff, the vocational expert's testimony indicates the three jobs identified on direct examination had a combined total of "only 5,680 jobs" regionally, and the six other jobs identified on cross-examination had a combined total of "only 2,220 in the State" (Id.). Because Plaintiff failed to cite the transcript pages where this vocational testimony is located, the Court thoroughly reviewed the administrative hearing transcript. Contrary to Plaintiff's representations, the vocational expert did not testify about the number of jobs available in the regional and state economies (Tr. 56-64). Instead, the vocational expert provided the number of jobs available in the national economy (Tr. 56-57, 59).[11] Essentially, Plaintiff is asking the Court to review the ALJ's decision based on the evidence that was not in the

---

11 In response to the ALJ's hypothetical question, the vocational expert testified that the hypothetical individual could work as: a mail clerk, DOT No. 209.687-026 with 68,000 positions in the national economy; an assembler in small products, DOT No. 706.684-022 with 180,000 positions in the national economy; and a ticket seller, DOT No. 211.467-030 with 36,000 positions in the national economy (Tr. 56-57). On cross-examination, the vocational expert responded to Plaintiff's hypothetical question by testifying the individual could be an usher, DOT No. 344.677-014 with 15,000 positions in the national economy; a furniture rental clerk, DOT No. 295.357-018 with 54,000 positions in the national economy; and a sorter in agricultural produce, DOT No. 529.687-186 with 42,000 positions in the national economy (Tr. 59).

administrative record when the ALJ rendered the decision.   But this is contra to the applicable law which limits review to the ALJ's decision and the evidence in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).   Moreover, the Sixth Circuit's holding in O'Neal, 799 F. App'x at 316-18, appears equally applicable to this situation because Plaintiff, despite having the opportunity to do so, did not develop the record through cross-examination of the vocational expert.   Notwithstanding, the vocational expert identified a significant number of jobs in the national economy that Plaintiff could perform (Tr. 56-57), which is the legal standard that the Commissioner must meet. See 20 C.F.R. § 404.1566; Taskila v. Comm'r of Soc. Sec., 819 F.3d 902, 905 (6th Cir. 2016) (citations omitted) ("Six thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant.'"); McCormick v. Sec'y of Health & Human Servs., 861 F.2d 998, 1000, 1002 (6th Cir. 1988); Hall v. Bowen, 837 F.2d 272, 274 (6th Cir. 1988).   For these reasons, the Court holds that the vocational expert's testimony constitutes substantial evidence to support Finding Nos. 10 and 11.

CONCLUSION

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."   Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004).   Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ

followed the applicable law.   (Id.).   After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to his challenge.

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

July 20, 2021

H. Brent Brennenstuhl
United States Magistrate Judge

Copies:       Counsel

22